## Federal Life Insurance Company v. Sayre.

([No. 24,553. Filed January 18, 1924. Rehearing denied June 25, 1924.]

1. INSURANCE.—*Life Insurance. — Forfeiture. — Non-Payment Premium.—Cash Surrender Value.—Waiver.—Surrender of Policy.*—In an action on an insurance policy which provided that "if three full years' premiums shall have been paid" and it became void for nonpayment of premium, the insured on surrender of the policy was entitled to the cash surrender value, *held* unnecessary to surrender or attempt to surrender the policy before suit where the insurer denied liability. p. 18.

2. INSURANCE.—*Life Insurance.—Premiums.—Premium Contract.—Validity.*—Where a contract was executed concurrently with the issuing of a life insurance policy, and was the inducement of insurer's acceptance, stipulating that the insurer was to pay forty per cent. of the annual premium in semiannual payments, and no greater amount should be paid, unless to meet unexpected losses, *held* payment of the semiannual installments was sufficient to support a recovery of the cash surrender value. p. 19.

3. INSURANCE.—*Life Insurance Premium Contract.—Answer.—Sufficiency.*—In an action on an insurance policy for the cash surrender value, where a contract was executed concurrently with the issuing of the policy, stipulating that the insured was to pay forty per cent. of the annual premium in equal semiannual payments and no more, unless to meet an unexpected loss by the insurer, an answer that the unpaid sixty per cent. of the

premium amounted to more than the cash surrender value, *held* insufficient to constitute a defense.   p. 21.

4.  INSURANCE.—*Life Insurance.—Complaint.—Demurrer to Answer.—Insurer's Liability.—Surrender of Policy.—Waiver.*—In an action on an insurance policy providing that on nonpayment of premium after three years, the insurer would pay the cash surrender value upon the surrender of the policy, where the complaint averred that the insured had demanded the cash surrender value and offered to surrender the policy, and the insurer had denied liability, an answer that the insured did not surrender or offer to surrender the policy, *held* a demurrer was properly sustained to the answer as it did not avoid the averment of denial of liability or show the insurer did not waive surrender.   p. 21.

5.  APPEAL.—*Review.—Sustaining Demurrer.—Harmless Error.*—When a general denial had been filed, it was not error to sustain a demurrer to a paragraph of answer, all the facts alleged therein being provable under the general denial.   p. 22.

6.  INSURANCE.—*Life Insurance.—Construction of Policy.—Days of Grace.—Non-Payment of Premium.—Date of Default.*—Where an insurance policy provided for thirty days' grace in which payment of premiums could be made, and for payment of cash surrender value of policy within thirty days after the policy was defaulted for non-payment of premiums, *held* the policy was not defaulted until thirty days after the due date.   p. 23.

7.  APPEAL.—*Instructions.—Invited Error.*—Appellant cannot be heard to complain of an erroneous instruction invited and procured to be given by himself.   p. 23.

8.  TRIAL.—*Life Insurance.—Erroneous Instruction.—Waiver.—Cured by Other Instructions.—Surrender of Policy.*—In an action on an insurance policy for the cash surrender value, an instruction that if the insurer denied liability at any time before the case was submitted to the jury, the insured was not required to surrender the policy, was not objectionable where another instruction correctly stated the time for the surrender of the policy.   p. 24.

9.  APPEAL.—*Review.—Instruction.—Reversible Error.*—Where the instructions considered as a whole, fairly state the law, even an inaccuracy or omission in a particular instruction is not cause for reversal.   p. 25.

10.  APPEAL.—*Review.—Refusal of Instructions.—Omissions.—Waiver.*—In an action on an insurance policy which provided for the payment of the cash surrender value upon default after the third year on surrender of the policy, where there was issue of whether or not the insurer had denied liability and

thereby waived surrender, an instruction that omitted the elements of waiver and required the surrender in any event, *held* properly refused.   p. 26.

11.   INSURANCE.—*Life Policy.*—*Premium Contract.*—*Liability for Unpaid Premiums.*—In an action on an insurance policy, where a contract was executed concurrently with the issuing of the policy, stipulating that the insured was to pay only forty per cent. of annual premiums, unless to meet unexpected losses to the company and no contingency ever arose, *held* the insured not indebted to insurer for the unpaid portion of the premium. p. 26.

12.   EVIDENCE.—*Insurance.*—*Construction of Policy.*—*Admissibility.*—In an action on an insurance policy for the cash surrender value, answers to questions asked an actuary as to the meaning of the terms "level premium" and "reserve net value," *held* properly refused as the interpretation of the contract was for the court.   p. 26.

13.   EVIDENCE.—*Insurance.*—*Construction of Policy.*—*Admissibility.*—In an action on an insurance policy for the cash surrender value, the construction of the contract was for the court and it was not error to exclude evidence of the interpretation placed on the policy by the insurance department of the State.   p. 27.

14.   APPEAL.—*Review.*—*Evidence.*—*Sufficiency.*—If there is any evidence tending to support every essential fact necessary to support the verdict, it is sufficient.   p. 28.

15.   EVIDENCE.—*Inferences.*—*Province of Court and Jury.*—The court or jury trying a case may draw any reasonable inference of facts from the evidence.   p. 28.

16.   APPEAL.— *Review.*— *Inferences.*—*Evidence.*—*Sufficiency.*—It is not essential that a fact be proved by direct or positive evidence, and where it may be reasonably inferred from facts and circumstances which the evidence tends to establish, it is sufficient.   p. 28.

17.   INSURANCE.—*Construction of Policy.*—*Waiver.*—*Forfeitures.* —Slight acts or circumstances upon the part of the insurer will be construed by the courts as a waiver to prevent a forfeiture, where the conditions in the insurance contract are in favor of the insurer.   p. 28.

From Wabash Circuit Court; *Charles R. Pollard,* Special Judge.

Action by Warren G. Sayre against the Federal Life Insurance Company for the cash surrender of an insurance policy.   From a judgment for plaintiff, the de-

fendant appeals. (Transferred from Appellate Court under §1394 Burns 1914, Acts 1901 p. 565.) *Affirmed.*

*Charles A. Atkinson* and *Edward E. Eikenbary,* for appellant.

*Switzer & Bent* and *Wickens, Osborn & Hamilton,* for appellee.

WILLOUGHBY, J.—This was a suit upon a life insurance policy issued by the Inter-State Life Assurance Company on the life of appellee, and a writing designated as a premium bond executed by the appellee, which together with the policy, constitute the contract of insurance in this case sued upon.

The case was tried upon an amended complaint which is in substance as follows:

"That the defendant is a corporation organized and existing under the laws of the State of Illinois, and for at least six years last past has been engaged in the general life insurance business. That upon the 14th day of April, 1898, there was in existence a life insurance company or corporation, organized under the laws of the State of Indiana, with its principal place of business at Indianapolis, Indiana, named the Inter-State Life Assurance Company. That on said 14th day of April, 1898, the said Inter-State Life Assurance Company, issued to appellee a policy on his life in consideration of the annual or semiannual payment of the premiums for the term of twenty years, pursuant to the contracts then entered into between the plaintiff and said insurance company, by its written policy of that date, duly signed, executed and delivered, did thereby insure the life of the appellee in the sum of $2,000, for the term of his natural life, (a copy of which policy is filed herewith and made a part of the complaint, marked exhibit 'A')."

That concurrently with the execution of said policy

and as a part of the said contract of insurance then entered into between the plaintiff and said Inter-State Life Assurance Company, and as the inducement to plaintiff to accept said insurance, the said Inter-State Life Assurance Company, and the plaintiff entered into a contract in writing, whereby it was agreed and stipulated that plaintiff should be required to pay but forty per cent. of the annual premium, so stipulated and provided in said policy to be paid, and which forty per cent. of said annual premium should be paid in semi-annual installments of twenty per cent. of such payments each six months during the premium term of twenty years, and in said contract and as a part of the contract of insurance so entered into on said date between the said Inter-State Life Assurance Company and this plaintiff, it was expressly stipulated and agreed that, no amount in excess of said forty per cent. shall be called for by the company from the insured, unless to meet unexpected business losses which may arise in the transaction of the company's business, (a copy of which contract is filed herewith and made a part of this complaint, marked exhibit "B").

Plaintiff avers that said concurrent contract was prepared by the said Inter-State Life Assurance Company, and is upon a printed blank furnished by said company, except as to the filling in of plaintiff's name, address, amount of premium and amount of insurance in the blanks left for that purpose. That said concurrent contract was the inducement to plaintiff to accept said insurance and formed the consideration upon which plaintiff entered into said contract of insurance. That plaintiff acted thereon and paid, and continued the payment of the premiums upon said policy to the said Inter-State Life Assurance Company pursuant to the provisions of said latter contract to, and including, the premiums falling due on October 14, 1909, by the pay-

ment of forty per cent. of the annual premium stipulated in said policy, in semiannual installments of twenty per cent. thereof each, and which payments of premium so made were accepted and retained by the said Inter-State Life Assurance Company. That at the time of entering into said contract of insurance the Inter-State Life Assurance Company, accepted said concurrent contract, (a copy of which is so marked exhibit, "B"), which together with said policy formed the contract of insurance between the plaintiff and said Inter-State Life Assurance Company, and promised and agreed with plaintiff that all plaintiff should be required to pay upon said contract of insurance would be the said forty per cent. of the stipulated annual premiums thereon, unless in case of epidemic or unexpected death losses he should be assessed his *pro rata* share, of such additional sum above the said forty per cent. as might be necessary to meet such unexpected death losses, if any, but in no event should said assessment exceed the said designated annual premium and, by said contract of insurance further agreed that in event of default in the payment of any premiums, by the plaintiff after three annual premiums had been paid at forty per cent. of the designated annual premium, the plaintiff should and would receive the cash surrender value stipulated and set forth in the table of surrender values contained in said contract of insurance for the year in which said default if any, should occur, and acting upon said inducements, representations and agreements, and in consideration thereof, plaintiff entered into said contract of insurance.

That on December 11, 1909, the said Inter-State Life Assurance Company, and the defendant company entered into a contract in writing, whereby the said Inter-State Life Assurance Company assigned and transferred its franchises, assets and good will to the

defendant, Federal Life Insurance Company, and reinsured its outstanding contracts of insurance, including the contract of insurance upon which this action is predicated, in the defendant company, and thereon and thereby the defendant reinsured, assumed and guaranteed the policies and contracts of the said Inter-State Life Assurance Company, so in force on said date, including the said contract of insurance with plaintiff, (a copy of which contract of reinsurance between the said Inter-State Life Assurance Company and the defendant is filed herewith and marked exhibit "C"), and made a part of this complaint.

That thereafter the plaintiff continued the payment of the premiums upon said contract of insurance to the defendant company in semiannual installments of twenty per cent. each, of the annual premium designated in said policy, pursuant to the terms of his said contract with the said Inter-State Life Assurance Company, to and including the premiums for the years ending on October 14, 1914, and which premiums were received, accepted and retained by the defendant company.

That he paid the premiums under said contract of insurance for sixteen full years and the first semiannual installment of the seventeenth year; that by the terms of said contract of insurance, the plaintiff was entitled, at the end of the sixteenth policy year, upon default in the payment of further premium, to receive in cash, upon the surrender of said contract of insurance, the sum of $1,051.80. That the plaintiff made default in the payment of the second installment of the seventeenth annual premium when due, and within thirty days thereafter, agreeable to the terms of said contract of insurance, made demand upon the defendant for the said $1,051.80, cash value under the terms of said insurance contract, and offered to surrender his said con-

tract of insurance to the defendant, agreeable to the terms thereof, but the defendant refused to pay to the plaintiff said cash value, agreeable to its said contract of insurance, or any part thereof, and denied any and all liability under said contract of insurance.

That at no time during the existence of said contract of insurance, has a sum in excess of said forty per cent. of the annual premiums designated in said contract been called for or levied by the defendant company nor by the said Inter-State Life Assurance Company, from the plaintiff, to meet unexpected losses, nor have any such unexpected losses arisen in the transaction of the business of the said Inter-State Life Assurance Company, or the defendant company, requiring a levy of a sum against the plaintiff in excess of said forty per cent. of the designated annual premiums so paid by him, pursuant to the terms of said contract. That he has performed all the conditions of his said contract of insurance on his part to be performed, and that there is now due and owing to him, from the defendant company, the sum of $1,051.80, with six per cent. interest thereon, from and after October 14, 1914, and he now brings said contract of insurance into court and offers to surrender the same to the defendant upon the payment, by the defendant, of said sum. Prayer for judgment against the defendant, Federal Life Insurance Company, in the sum of $1,500.

Clause three in said policy provides that, "this policy shall be indisputable after one year from its date of issue, for the amount due, provided the premiums are duly paid as set forth above, except that military or naval service in time of war without a permit, are risks not assumed by the company at any time but the reserve on this policy will be due and payable in case of death from such service."

Concurrently with the issuance of said policy and as a part of the insurance contract between the parties, appellee executed to said Inter-State Life Assurance Company a premium bond, promising to pay it $129 annually for twenty years on certain conditions, among which are the following: "(1) The true intent and purport of this bond is that I hold myself bound to pay for said Policy of Insurance, a sum of money annually, the minimum amount of which shall be forty (40%) per cent. thereof, twenty (20%) per cent. payable on the execution of this Bond, and an additional twenty (20%) per cent. each six months thereafter; the maximum amount that can be called for annually shall in no case exceed the face value of this Bond. No amount in excess of said forty (40%) per cent. shall be called for by the company from the insured unless to meet unexpected losses which may arise in the transaction of the Company's business, it being understood that any levy made hereon shall be due and payable at the Home Office of the Company within sixty days from date thereof, and if not paid within said sixty days the insurance herein referred to shall cease and determine, except as provided in the policy.

"(3) This Bond will not be liable to any levy in excess of the twenty (20%) per cent. above stipulated, each six months, except when the death claims against the Company are in excess of the mortuary funds in the hands of the Company and then only for an amount equal to the *pro rata* share of the Premium Bonds and other securities held by the Company, to make good the sum necessary to pay such death claims; and such levy or levies shall not exceed the face of this Bond annually, as above stated.

"(5) The payments on this Bond shall terminate upon the surrender to the Company of the Policy upon

which it is predicated or at the expiration of twenty years from the date hereof."

To the amended complaint a demurrer was filed, alleging that the amended complaint does not state facts sufficient to constitute a cause of action. This demurrer was overruled and appellant excepted. Appellant then filed an answer in two paragraphs. The first paragraph was a general denial and the second was in substance as follows:

"Defendant admits that at the time plaintiff alleges default was made in the second cash installment of the seventeenth annual premium on the policy sued on, there was payable to plaintiff by the terms of said policy upon demand therefor and surrender of said policy, the cash surrender value of $1,051.80; that defendant alleges it is expressly provided in said policy that any existing indebtedness on account thereof should reduce the amount of such cash value so payable; that plaintiff pursuant to the terms and provisions of exhibit 'B' filed as a part of the amended complaint, elected, instead of paying the full sum of each annual premium in cash, to pay and did pay but forty per cent. thereof in cash, and that the balance of each such premium, to wit, sixty per cent. remained unpaid and constituted a loan to plaintiff and an indebtedness against said policy, which with interest compounded at four per cent. as provided in said exhibit 'B' is deductible from the amount of the cash value of said policy, so payable to plaintiff; that the amount of said premiums so remaining unpaid with interest as aforesaid was at the time of said default $1,879.52, which amount was and is an indebtedness against said plaintiff and against said policy and is in excess of the cash surrender value specified in said policy and because of which defendant owes plaintiff nothing."

A demurrer was filed to this paragraph of answer

alleging it did not state facts sufficient to constitute a cause of defense to appellee's amended complaint, and the cause of action therein stated, which demurrer was sustained.

The defendant then filed an additional and third paragraph of answer to the amended complaint and says, that in paragraph eight, entitled "Termination and Surrender," on the second page of the policy a copy of which is attached to the amended complaint with the following provisions, to wit:

"If this policy shall become void by the violation of any stipulation of agreement, all payments made or accepted hereon shall be retained by and shall belong to the Company, except that, if three full years' premiums shall have been paid on this policy, it shall cease or become void solely by the non-payment of any premium when due, the owner will be entitled on legal surrender of this policy within thirty days thereafter, to one of the methods of settlement, provided in the table on the third page hereof at the date of surrender, as follows: 1. Receive a Paid-up Life Policy for the amount specified in said table; or, 2. Receive the amount specified in the said table as the cash value of this Policy."

The plaintiff admits in his amended complaint that he made default in the second installment of the seventeenth annual premium when due and within thirty days thereafter, and that said second installment has never been paid by plaintiff or by anyone for or on his behalf and that by reason of such default said policy lapsed; that in order to entitle plaintiff to the cash surrender value set forth in the Table of Loans and of Surrender values, either in cash, extended or Paid-up Insurance and Additions at Death, in accordance with the provisions of said paragraph eight of said policy, it was

necessary and plaintiff was required to legally surrender to defendant within thirty days from the date of said default of said policy, and that neither said plaintiff nor anyone for or in his behalf surrendered or offered to surrender said policy within said thirty days as provided in said paragraph eight, wherefore defendant says that plaintiff is not entitled to the surrender value mentioned in his amended complaint, nor any part thereof.

A demurrer was filed to this third paragraph of answer on the ground that it did not state facts sufficient to constitute a cause of defense to appellee's complaint and cause of action therein stated. This demurrer was sustained and exceptions taken and the cause was tried on the issue stated in the amended complaint and the general denial thereto. A verdict was returned in favor of appellee for the sum of $1,256.87, upon which judgment was rendered, from which appellant appeals.

The first error relied on for reversal is that the Wabash Circuit Court erred in overruling appellant's demurrer to the amended complaint of appellee. The memorandum attached to the demurrer to the complaint alleges that in the amended complaint it is admitted by appellee that he made a default in payment of the second semiannual cash installment of the seventeenth annual premium, due October 14, 1914; and that because of such default said policy ceased to be in force.

The appellant says that the complaint does not contain any averment that appellee surrendered said policy to the appellant within the time required by the provisions thereof. And that the offer to surrender the policy was not a compliance with the terms of the policy nor of said averment of the complaint; but the complaint does allege that by and agreeable to the said contract of insurance the plaintiff made demand upon defendant for the said sum of

$1,051.80, cash value under the terms of said insurance contract and offered to surrender the said contract of the defendant agreeable to the terms thereof, but defendant refused to pay to plaintiff said cash value agreeable to the said contract of insurance or any part thereof and denied any and all liability under said contract of insurance. It is further averred in the complaint that the plaintiff has performed all conditions of the said contract of insurance on his part to be performed. The law does not require any one to do any unnecessary or useless thing. When the appellant denied any and all liability under said contract of insurance it was unnecessary for the appellee to surrender or attempt any further surrender of the policy. See, *New York Life Ins. Co.* v. *Lahr* (1922), 192 Ind. 612, 137 N. E. 673; *Equitable Life Assur. Soc., etc.,* v. *Perkins* (1907), 41 Ind. App. 183.

Appellant also says that the amended complaint is insufficient because in it appellee admits that he only paid forty per cent. of $129.60, for sixteen and one-half years and admits that he never paid sixty per cent. of this annual premium or any part of said sixty per cent. But the complaint avers that concurrently with the execution of said policy and part of said contract of insurance then entered into between the plaintiff and said Inter-State Life Assurance Company, that by inducement of said plaintiff to accept said insurance, entered into a contract in writing whereby it was agreed and stipulated that forty per cent. should be paid in semiannual installments of twenty per cent. every six months. And in said contract as a part of said contract of insurance so entered into on said date, it was expressly stipulated and agreed that no amount in excess of said forty per cent. shall be called for by the company, unless to meet unexpected losses.

By the allegations in the complaint it appears that this contract was executed concurrently with the issuing of the policy and was the inducement to the plaintiff to accept said insurance. That he did accept such insurance and did pay the forty per cent. required under the contract each six months until the first six months of the seventeenth year, after the issuing of the policy and that at no time during the existence of said contract of insurance had a sum in excess of said forty per cent. of the annual premium designated in said contract been called for by the company to meet unexpected losses nor has any such unexpected losses arisen in the transaction of the business in the said company requiring the levy of the designated amount of the annual premium paid by him pursuant to the terms of the said contract.

The appellant relies on the case of *Federal Life Ins. Co.* v. *Kemp* (1919), 257 Fed. 265, 168 C. C. A. 349. In that case the contract executed at the time of the policy and called a premium loan certificate, provided that the true intent and purpose of this loan certificate is that: "I hold myself bound to pay for said policy of assurance a sum of money annually, the cash part of which shall be fifty per cent. (50%) of the premium thereon. In order that the terms and conditions of this loan certificate shall be made good, the company shall have a loan upon the policy of assurance upon my life, * * * to the extent of the annual differences * * * computed in accordance with the insurance law and mathematics."

It will be observed that in that case the policy was issued upon the payment of an annual premium of $182.50, one-half to be paid in cash and providing that the remaining half of the premium shall become an indebtedness secured by a lien against the policy.

In the instant case no such provision is found in the

bond or policy. In the instant case the amount to be paid each year was forty per cent. of $129.60, and that this amount should be paid semiannually in installments of twenty per cent. each; that the remaining sixty per cent. should not be paid except upon certain contingencies alleged in the complaint and which the complaint alleges never happened. So the case of *Federal Life Ins. Co.* v. *Kemp, supra,* cannot be considered as controlling in this case.

In *Federal Life Ins. Co.* v. *Petty* (1912), 177 Ind. 256, it is held that pursuant to §4753 Burns 1914, providing for the transfer and reinsurance of a company's business the rights of the assured cannot be reduced by the provisions of the reinsuring contract entered into between the companies. On that point see also *Federal Life Ins. Co.* v. *Kerr* (1909), 173 Ind. 613; *Federal Life Ins. Co.* v. *Frazer* (1922), 192 Ind. 565, 137 N. E. 273, 25 A. L. R. 1530.

It was not error to overrule the demurrer to the amended complaint.

The first paragraph of defendant's answer is a general denial. The second paragraph alleges that the cash surrender value of $1,051.80, is not equal

3. to the amount due and owing the company on account of premiums unpaid and interest thereon. That the amount of premiums unpaid at the time of bringing this suit with interest thereon amounts to $1,879.52. From what we have said in discussing the overruling of the demurrer to the complaint this paragraph of answer is insufficient to constitute a defense to said action.

In the third paragraph of answer the defendant says that neither said plaintiff nor anyone for or on his behalf surrendered or offered to surrender said

4. policy within said thirty days as provided in paragraph eight. A demurrer was filed to said

third paragraph and from the memorandum filed therewith the plaintiff alleges said paragraph is not sufficient and says that it fails to negative the averment in the complaint that defendant denied liability upon the policy in suit. It fails to show that defendant did not waive a surrender of the policy after a default in payment of premiums. It fails to negative the averment of the complaint that plaintiff made demand upon the defendant for the cash surrender value of said policy and that defendant denied liability thereon.

The complaint avers that the plaintiff made default in the payment of the second installment of the seventeenth annual premium when due and within thirty days thereafter made demand upon defendant for said sum of $1,051.80, cash value and offered to surrender said contract of insurance agreeable to the terms thereof but defendant refused to pay said cash value and denied any and all liability under said contract of insurance. These averments show a waiver by the company of the surrender of the policy. This paragraph of answer fails to avoid the averment of the complaint that defendant denied liability upon the contract in suit, and fails to show that the defendant did not waive the surrender of the policy.

It is also apparent that all the facts stated in this paragraph if admissible at all were admissible under the general denial. When the general denial has been filed it is not error to sustain a demurrer to a paragraph of answer, all the facts alleged therein being provable under the general denial. No error can be based on sustaining the demurrer to this paragraph of answer. 1 Watson, Revision Works Practice §668; *Butler* v. *Thornburg* (1892), 131 Ind. 237.

The third error relied on for reversal is that the Wabash Circuit Court erred in overruling appellant's motion for a new trial. The specifications of said mo-

tion are as follows: (1) The verdict of the jury is not sustained by sufficient evidence. (2) That the verdict is contrary to law.

The motion also avers error in giving to the jury instruction No. 9, requested by appellee and also instruction No. 10, requested by appellee.

Instruction No. 9, requested and tendered by appellee and given by the court is a correct interpretation of clause eight of the policy and therefore a correct statement of the law of the case and no error was committed in giving this instruction. It is claimed by appellant that instruction No. 9 is in conflict with instruction No. 4 given by the court to the jury and requested by appellant. Instruction No. 9 given at request of appellee is not erroneous.

Instruction No. 4, given at the request of appellant was erroneous in that it stated that before the plaintiff is entitled to recover in this action, he must prove by a preponderance of the evidence that he has complied with all the terms and provisions on his part to perform among which provisions is the following: "To surrender to defendant company the policy of insurance herein sued on within thirty days after the date of default of payment, which in this case the court instructs you would mean thirty days after October 14, 1914."

This part of said instruction No. 4, was erroneous because the contract of insurance provides for a grace of thirty days in which plaintiff could make payment after the due date provided interest be included on payment made during the period of grace. This grace did not extend the due date but was grace within which the defendant would accept a payment already overdue. But the error in giving this instruction was invited and procured by appellant and it cannot be heard to complain that the disagreement

between an erroneous instruction given at its request, with correct instructions given by the court of its own, motion, or on the request of the appellee, produces inconsistency in the instructions. *Lake Erie, etc., R. Co.* v. *Cotton* (1910), 45 Ind. App. 580; *Domestic Block Coal Co.* v. *DeArmey* (1913), 179 Ind. 592; *Kingan & Co.* v. *Clements* (1915), 184 Ind. 213; *Marion Trust Co.* v. *Robinson* (1915), 184 Ind. 291; *Daywitt* v. *Daywitt* (1917), 63 Ind. App. 444; *Pennsylvania Co.* v. *Stalker, Admx.* (1918), 67 Ind. App. 329; *Orient Ins. Co.* v. *Kaptur* (1911), 176 Ind. 308.

The appellant claims that instruction No. 10 requested by appellee was erroneous and says that it informed the jury that if it found that appellant denied liability at any time before the case was submitted to the jury, the appellee was not required to surrender the policy. This instruction is not open to the objection urged against it. It is one of a series of instructions. The court had theretofore in instruction No. 7 informed the jury that if they found from the evidence that the appellee had paid the premiums for sixteen years and the first installment of the seventeenth year, and made default in the payment of the second installment of the seventeenth year, that under the contract of insurance he would be entitled to receive the cash surrender value provided therein for that particular year, upon legal surrender of said contract of insurance within thirty days after the default in the payment of said premium. This instruction clearly told the jury that the appellee would be entitled to the cash, surrender value upon the surrender of the policy within thirty days after default, and he was not in default until the expiration of the thirty days of grace. In both of these instructions the jury were told that the condition upon which the appellee could receive the cash surrender value, was upon the surrender, or offer to

surrender and waiver thereof, within the thirty days after the expiration of the thirty days of grace.

By instruction No. 8 the court told the jury that under the provisions of the contract for grace in the payment of premiums, appellee could not be held to be in default for the payment of premium falling due on October 14, 1914, until after the expiration of thirty days from said date and that defendant could not declare a forfeiture of said policy until after the expiration of thirty days from said date. The appellant did not except to the giving of this instruction.

The jury had been informed that appellant had thirty days after the policy ceased or become void for non-payment of premium, within which to make the surrender, by three instructions, one procured to be given at the request of appellant, and two given at the appellee's request, to one of which no exception was reserved.

Instruction No. 10 was a correct statement of the law upon the subject of the waiver of surrender, and the jury could not have been misled thereby. Even 9. if the instruction standing alone were open to the criticism offered against it, the subject of the criticism was embraced within other instructions given. When the instructions considered as a whole, fairly state the law, even an inaccuracy or omission in a particular instruction is not cause for reversal. *Chicago, etc., R. Co.* v. *Dinius* (1913), 180 Ind. 596; *Southern R. Co.* v. *Friedley* (1913), 52 Ind. App. 192; *Indianapolis, etc., Transit Co.* v. *Haines* (1903), 33 Ind. App. 63.

It does not appear from the record that any exceptions were reserved by appellant to the refusal of the court to give either of appellant's tendered instructions Nos. 3, 5, and 6. However, it may be observed that each of said instructions are defective.

Instruction No. 3, omits the element of waiver and

asks the court to instruct the jury that the appellee would be required to yield up or surrender his policy in any event, notwithstanding the issue of whether or not appellant had denied liability and thereby waived such surrender.

Instructions Nos. 5 and 6 were upon the theory that appellee was indebted to appellant under the premium bond to the extent of sixty per cent. of $129.60, each year. This is an erroneous construction of the contract of insurance as we have pointed out in the discussion of the demurrer to the amended complaint in this case. It was not error to refuse to give these instructions.

The defendant placed a witness on the stand, who had testified that he was an actuary for the American Central Life Insurance Company, and asked of him the following question: "Is there a term used in the life insurance business known as level premium policies?", to which the witness answered, "Yes, sir." He was then asked, "What is meant by the level premium policy?", to which question the plaintiff objected.

The defendant then offered to prove in answer to the question propounded to this witness that a level premium policy is a policy where the premiums are fixed for and during the life of the insured, or for a certain number of years, as may be provided in the policy; and that in a level premium policy, the number of years, or the number of semiannual, or quarterly payments, as they may be payable are unchangeable, neither to be increased or decreased.

The court then sustained the objection of the plaintiff to the question.

The witness was then asked "What is meant by the reserve net value of a policy such as is issued to Mr. Sayre, and sued on in this case?", to which plaintiff

objected for the reason that the parties rights under this contract are determined by the contract itself; and it expressly fixes the reserve and the cash value, and the premium to be paid. The contract here provides in itself for the payment of the premiums and fixes the amount, and by its express terms provides that only a certain sum should be required of the plaintiff except upon the happening of a contingency which is not now shown to have existed or to have ever existed, and it is not a question for an actuary, or a question of interpretation by an actuary, but it is a question of the interpretation of the contract itself as a matter of law by the court. The court then sustained the objection.

Other similar questions were asked the witness and objections were made by the plaintiff, but all such questions were pertaining to the construction to be placed upon the policy and contract of insurance herein. The interpretation of the contract itself is a matter for the court, and the objections were properly sustained to the evidence tendered by the defendant on that subject.

A witness was then placed on the stand by the defendant and the defendant offered to prove by him that the company had been making deposits with the insurance department of the State of Indiana, and what interpretation the insurance department of the State of Indiana put upon the papers so deposited by such company and of the length of time the premium bond was deposited in the insurance department of the State of Indiana and what construction the insurance department of the State of Indiana and the State of Illinois put upon such premium bond. Objection to this evidence was correctly sustained. The construction of the insurance contract is a matter for the court and not for the jury.

The appellant contends that the verdict is not sustained by sufficient evidence and says that the plaintiff

failed to prove either that he surrendered the policy or facts showing that such surrender was waived. The rule applicable to that question is that if there is any evidence tending to support every essential fact necessary to support the verdict, it is sufficient evidence. It is also the rule that the court or jury trying the case may draw any reasonable inference of facts from the evidence. It is not essential that a fact be proven by direct or positive evidence, and where it may be reasonably inferred from the facts and circumstances which the evidence tends to establish it will be sufficient on appeal.

Appellant is seeking a forfeiture, and is asking this court to enforce a forfeiture, against the verdict of the jury and the decision of a trial court, finding that the appellant had waived the surrender of the policy, and is asking the court to enforce such forfeiture in contravention of the established rule that, slight acts or circumstances upon the part of the insurer will be construed by the courts as a waiver to prevent a forfeiture, where the condition in the contract is in favor of the company. *National Masonic, etc., Assn.* v. *McBride* (1904), 162 Ind. 379.

From a careful examination of the evidence in this case we conclude that there is some evidence tending to support every material fact necessary to sustain the verdict.

The appellee has assigned cross errors in this action bringing under review the action of the trial court in excluding certain evidence, but in our view of the case it is not necessary to consider them. No reversible error appears in the record.

Judgment affirmed.