# WESTON v. THE STATE.

[No. 20,887. Filed November 2, 1906.]

1. HOMICIDE.—*Manslaughter.*—*Assault and Battery.*—*Death Resulting.*—The defendant's commission of an unlawful assault and battery upon deceased, resulting in his death, constitutes manslaughter. p. 326.

2. HOMICIDE.—*Misadventure.—Assault and Battery.—Justifiable.*
—The defendant's commission of a justifiable assault and battery upon deceased, resulting in his death, constitutes a homicide by misadventure. p. 327.

3. TRIAL.—*Instructions.—Criminal Law.—Homicide.—Self-Defense.—Actual and Apparent Dangers.*—An instruction, in a prosecution for homicide occasioned by defendant's striking deceased a blow with his fist, that defendant could "justify the attack upon deceased only on the theory that at the time he struck the deceased he, the defendant, was in imminent danger of great bodily harm or in imminent danger of losing his life at the hands of the deceased," is erroneous, since it excludes the idea of apparent danger. p. 327.

4. CRIMINAL LAW.—*Self-Defense.—Test.*—Defendant has the right to defend himself by force where, from his viewpoint, it is reasonably apparent that he will probably suffer personal injury at the hands of an aggressor. p. 328.

5. SAME.—*Self-Defense.—Character of.*—To justify self-defense by the use of the fists does not require that the reasonably apparent danger shall be so great as the danger sufficient to justify the use of a deadly weapon. p. 328.

6. SAME.—*Self-Defense.—When Right Begins.—Assault and Battery.*—Defendant, when it is reasonably apparent to him that he is assaulted, or will be immediately, but not to the degree of endangering his life, may resist by the use of such force as is reasonably calculated to protect him from such dangers. p. 328.

7. TRIAL.—*Instructions.—Curing.—Criminal Law.—Homicide.—Self-Defense.*—A positively incorrect instruction on the right of self-defense in a homicide case, is not cured by the giving of a correct instruction thereon, confusion of the jury upon a vital question probably resulting. p. 329.

From Huntington Circuit Court; *James C. Branyan,* Judge.

Prosecution by the State of Indiana against Boston Weston. From a judgment of conviction, he appeals. *Reversed.*

*J. S. Branyan* and *C. W. Watkins,* for appellant.

*Charles W. Miller,* Attorney-General, *C. C. Hadley, H. M. Dowling* and *W. C. Geake,* for the State.

GILLETT, J.—Appellant was convicted in the court below of involuntary manslaughter. There was testimony

of the following state of facts: On the evening of January 30, 1906, a party of six men went from Decatur to Huntington to attend a minstrel performance and a lodge banquet. The members of the party, or some of them at least, commenced drinking when they reached Huntington. They were quite boisterous at the performance, and various members of the party, or all of them, were drinking at the banquet, which was held afterwards. At 1 o'clock a. m. they telephoned for a hack, and appellant, who was a hack driver, came in response to the message, and drove them to the depot. Upon their alighting, an altercation occurred between them and appellant over the question as to whether he was entitled to seventy-five cents in addition to the like sum which he had already received. The upshot of the quarrel was that appellant struck one of the party, Roman J. Holthouse, with his fist, knocking him down. As the latter fell, his head struck the sidewalk, causing his death. According to the testimony of appellant, while the dispute was in progress the members of the party advanced toward him, forming a semicircle, while he retreated until he stood beside his hack. Their talk was loud and profane, and their manner threatening. Appellant testified that he merely continued to assert that he was entitled to the additional fare, when the deceased, calling him a vile name and threatening to knock his head off, stepped quickly towards him. It was in these circumstances, according to appellant, that the blow was struck, and he testified that he was frightened at the time. There was testimony on behalf of the State which tended to put the matter in a different light, but in material particulars appellant was corroborated by other witnesses.

No claim is advanced that appellant intended to kill the deceased. If appellant is guilty, it must be on the theory that in striking the blow he committed an assault 1. and battery, and that therefore the case is one in which, while he was in the commission of an unlaw-

ful act, he killed the deceased. On the other hand, if the circumstances were such as to justify appellant in

2. striking the blow as a measure of self-defense, his act was lawful, and the killing was but a homicide by misadventure.

The trial court gave forty-eight instructions to the jury. A number of these instructions are complained of by appellant's counsel. Among them are instructions

3. seven and seventeen. The material portion of instruction seven, so far as present purposes are concerned, reads as follows: "The defendant can justify the attack upon the deceased only on the theory that at the time he struck the deceased he (defendant) was in imminent danger of great bodily harm, or in imminent danger of losing his life at the hands of the deceased." Instruction seventeen is as follows: "I instruct you, gentlemen of the jury, that the doctrine of self-defense is a humane provision of the law which gives one the right to repel force by force, when attacked, and even to take human life to avoid great bodily injury or to save one's life. In this case, if you find from the evidence that the defendant, Boston Weston, struck the deceased, Roman J. Holthouse, when he, the defendant, was in no danger of great bodily injury and in no danger of losing his life, then I instruct you, if you so find from the evidence, beyond a reasonable doubt, that the law of self-defense would be no defense for the defendant in this action." The principal objection which is offered to the above instructions is that they limit the right of self-defense to a situation of actual danger. We are of opinion that appellant has just cause to complain of said instructions, and particularly of the seventh. It will be observed that by the use of the word "only" in said instruction all claim of a justification for appellant's act was limited to a case in which he was in fact in imminent danger of losing his life or sustaining great bodily harm. While such a situation would have authorized appellant to

act in self-defense, yet his counsel properly object to the fact that the instruction denied to him the right to have the jury consider whether he honestly and reasonably believed that the danger was real. *Batten* v. *State* (1881), 80 Ind. 394; *Bryant* v. *State* (1886), 106 Ind. 549. Of course the defendant was not entitled to claim the benefit of a 4. belief that danger existed unless the facts were such as to make his belief a reasonable one, but, in determining whether he had reasonable cause to entertain such belief, the matter must be judged from the standpoint of the man himself. As was said by the supreme court of Iowa: "The inquiry is, was the danger actual to the defendant's comprehension; not whether the danger existed in fact, not whether the injury was actually intended by the deceased, but was it evident or actual to the prisoner as compared with danger remote or problematical." *State* v. *Neeley* (1865), 20 Iowa 108.

We may further add concerning said instructions, although complaint is not made of that phase of them, that the court erred in the further particular of con- 5. fining the right of self-defense to a situation so grave that the danger to be averted was the loss of life or serious bodily harm. It must be remembered that appellant only made use of his fist. To justify such a method of defense, it is not required that the danger, real or apparent, should be as great as where resort is had to the use of a deadly weapon. If the deceased committed an assault upon appellant, in such manner as to bring 6. him into imminent danger of any injury, or to cause such an appearance of danger as to lead him reasonably to believe that it existed, he was not bound to stand until he received the blow, and in putting the doctrine of self-defense before the jury the right of appellant to strike a blow should not have been circumscribed to a situation in which he was in danger of death or serious bodily injury. 1 Wharton, Crim. Law (9th ed.), §628; *State* v.

*Sherman* (1889), 16 R. I. 631, 18 Atl. 1040; *Gallagher* v. *State* (1859), 3 Minn. 270. In 1 Clark & Marshall, Law of Crimes, §212, the authors state: "When a man is assaulted, but not in such a way as to endanger his life or threaten great bodily harm, he has a right to defend himself, and, in doing so, to use any necessary force short of taking his assailant's life or inflicting great bodily harm; and, unless the force employed is clearly excessive, he is not guilty of assault and battery."

It was most important to appellant, in view of the unapprehended consequence of the striking of the blow, that the precise quality of his act should have been presented to the jury under clear instructions as to the right of self-defense. The question was whether the blow which he struck was an unlawful one. If it was unlawful, and death resulted therefrom, he was at least guilty of involuntary manslaughter (*State* v. *Johnson* [1885], 102 Ind. 247), but if the blow was lawful, he should go acquit.

It is true that, in the course of the exceedingly long charge that the court gave to the jury, there was an instruction given, which was tendered by appellant, 7. upon the subject of his right to act upon appearances, but this was not sufficient to obviate the objection which appellant's counsel have pointed out to instructions seven and seventeen. While instructions are to be considered as a whole, yet if the defect in an instruction is so great as to cause uncertainty as to the law in the minds of the jurors, after listening to all the instructions, the cause must be reversed. *Somers* v. *Pumphrey* (1865), 24 Ind. 231; *Bradley* v. *State* (1870), 31 Ind. 492; *Kingen* v. *State* (1874), 45 Ind. 518; *Toledo, etc., R. Co.* v. *Shuckman* (1875), 50 Ind. 42; *State, ex rel.,* v. *Sutton* (1885), 99 Ind. 300; *Clark* v. *State* (1902), 159 Ind. 60. We may well quote in this connection the following declaration of this court in one of the older cases: "It is true, that upon this subject a correct instruction was given at the

request of the defendant. But that did not repair the error. Contradictory instructions would, if allowed, make the trial by jury a most mischievous institution." *Clem* v. *State* (1869), 31 Ind. 480, 483.

Other questions are discussed by counsel for appellant, but, as it does not appear that they are likely to arise upon another trial, we shall not pass upon them.

Judgment reversed, with an order for a new trial.