First National Bank of Vernon *v.* Federal
Land Bank of Louisville.

[No. 14,180. Filed August 12, 1931.]

16

 
██

*Fitzgerald & Fitzgerald,* for appellant.

*Montgomery & Montgomery* and *W. T. Kannard,* for appellee.

KIME, J.—This was an action for the foreclosure of a real estate mortgage brought by appellee, a banking corporation, organized and doing business under the Federal Farm Loan Act (12 USCA §641 *et seq.*); the appellant, a national bank, organized and doing business under the National Bank Act (12 USCA §21 *et seq.*), being a party defendant to the action. The appellee, on November 3, 1922, loaned to Charles Richmann and Vivian Richmann, party defendants in the lower court, the sum of $2,200. The loan was made according to the provisions of the Federal Farm Loan Act. The loan was evidenced by a promissory note and secured by a mortgage upon 140 acres of real estate owned by the Richmanns in Jennings County, Indiana. The borrowers, according to the provisions of the Federal Farm Loan Act, became shareholders in and members of a local farm loan association, called the "Neil's Creek National Farm Loan Association."

It appears that Charles Richmann was indebted to the First National Bank of Vernon in the sum of $800 on an unsecured note. The bank thought it was going to be an entire loss, according to the cashier. Richmann, with his wife joining, deeded to the First National Bank of Vernon 140 acres of land. The deed was executed on June 9, 1924. On this same date, a payment was made on the mortgage to the Federal Land

Bank of Louisville. It does not appear who made the payment. The only reference in the deed to the mortgage is: "The grantee herein takes this land subject to a mortgage of twenty-two hundred dollars held by the Federal Land Bank of Louisville, Kentucky." The part relative to the $800 is as follows: "Convey and warrant" to First National Bank "for the sum of Eight Hundred Dollars." Then, on December 1, 1924, the exact day it was due, a payment of $71.50 was made on the mortgage, but again there is no evidence of who made the payment. On June 16, 1925, there was another payment of a like amount with the source undisclosed. But, on this same date, June 16, 1925, the cashier of appellant bank, seeking to secure for appellant the shares of stock held by the Richmanns in the Neil's Creek Farm Loan Association, executed a certificate, which was forwarded by appellee bank to appellant bank, wherein it was stated that appellant had assumed the mortgage indebtedness, and, in consideration of the transfer of the stock to appellant's name on the records of the association, that appellant was to assume all liabilities of membership in the association. Upon receipt of the certificate, the stock was properly transferred to the name of appellant on the books of the farm loan association. The certificate reads as follows: "Loan No. 17536.

"To the Federal Land Bank of Louisville. Louisville, Ky.

"This is to Certify that we, for the sum of Thirty-five Hundred Dollars, *have purchased* the entire tract of land which was mortgaged to you by Charles Richmann to secure a loan from you in the sum of Twenty-two Hundred Dollars, and we *have assumed* the payment of said indebtedness and *have purchased* the original shares of stock held by the vendor in the Neil's

Creek National Farm Loan Association, and *have assumed* all the liabilities thereunder.

"Dated at Vernon, Indiana, the 16th day of June, 1925.

"The First National Bank of Vernon, Vernon, Indiana.

"Signature of Purchaser Permanent Address
"E. P. Trapp, Cashier
"Signature of Purchaser Permanent Address
"Witness: Donald Overfield

"I certify that the above statements are true, and I hereby confirm the sale and authorize the Secretary-Treasurer to legally transfer the original shares of stock to the purchaser or purchasers set out above.

"Chas. Richmann
"Signature of Seller
"Vivian Richmann
"Signature of Seller

"Witness: Frederick Henstler"

"This is to certify that First National Bank of Vernon having purchased the entire farm of Charles Richmann on which there is a Mortgage or Trust Deed to the Federal Land Bank of Louisville in the sum of Twenty-two Hundred Dollars, and the stock interest of the Neil's Creek.

"Dated at Vernon, Indiana, the 26th day of June, 1925.

"Attest Homer McGannon "William Coray
"Secretary-Treasurer "President."

(Our italics.)

This certificate is on form of appellee, but was introduced in evidence without any objection whatever from appellant.

On February 6, 1926, appellant conveyed the real estate to Donald Overfield, the assistant cashier of such bank. He held this land until August 14, 1926, when

he conveyed it back to The First National Bank of Vernon "for the sum of one dollar," with nothing said about the mortgage. There was another payment made on the mortgage of $71.50 on June 30, 1926, while Overfield held title to the land, but it does not appear that he made it or that the Richmanns did either, for that matter. The deed from The First National Bank to Overfield is not set out, but the court found that he assumed the mortgage.

The cashier of The First National Bank said that it (the bank) paid two or three amortization payments on the mortgage.

On April 13, 1929, appellee filed its complaint of foreclosure in the Jennings Circuit Court. Appellant was made a party defendant therein, appellee alleging in its complaint that, by reason of the certificate executed by appellant on June 16, 1925, it had assumed the indebtedness and become liable for the payment of the mortgage indebtedness, and asked for a personal judgment against appellant.

One pertinent clause of the complaint is as follows: "Plaintiff says that the defendants Charles Richmann and Vivian M. Richmann, by their deed dated June 9, 1924, recorded in deed book 68, page 342, conveyed the land herein described to the defendant, The First National Bank of Vernon, Indiana, a part of the consideration for said transfer being that the said The First National Bank of Vernon, Indiana, would assume the payment of said mortgage, and that, on the 16th day of June, 1925, said loan was transferred to the defendant, The First National Bank of Vernon, the terms of said transfer being that said defendant was to assume payment of said note and to assume all liabilities of membership under the Neil's Creek National Farm Loan Association, through which said loan was made, and which transfer was duly signed by the said The

First National Bank of Vernon by E. P. Trapp, cashier."

The court found for the plaintiff upon its complaint and against each and all of the defendants "and that the plaintiff is entitled to recover upon the note herein sued upon in the sum of twenty-two hundred eighty-nine dollars and fifty-five cents ($2,289.55), as principal and interest, and the further sum of two hundred ($200) dollars as its attorneys' fees, making a total of twenty-four hundred eighty-nine dollars and fifty-five cents ($2,489.55), together with the costs of this action, all collectable without relief from valuation and appraisement laws and further guaranteed by the defendant Neil's Creek National Farm Loan Association, *and afterwards its payment was assumed by the defendant, The First National Bank of Vernon, Indiana, and later by the defendant Donald Overfield;* and the court further finds that said note is secured by twenty-two (22) shares of stock with a par value of one hundred ten ($110) dollars in plaintiff, the Federal Land Bank of Louisville and by twenty-two (22) shares of stock with a par value of one-hundred ten ($110) dollars in the Neil's Creek National Farm Loan Association, all of which stock was issued in connection with the loan of money herein and is now held as collateral security, and the court further finds that said note is secured by the real estate mortgage in suit upon the lands therein described and plaintiff is entitled to have a foreclosure of said mortgage and sale of mortgaged premises for the satisfaction of same sums." (Our italics.)

Judgment was rendered accordingly, with execution first against Donald Overfield, second against The First National Bank of Vernon, Indiana, and third against the Neil's Creek National Farm Loan Association. Appellant then filed a motion for a new trial, assigning that the decision is not sustained by sufficient evidence

and is contrary to law. The overruling of this motion is assigned as error here.

This compels us to search the record. If there is any evidence, or legitimate inference which may be drawn from the evidence, to sustain the trial court, the judgment must be affirmed. *Chase* v. *Kendall* (1855), 6 Ind. 304; *Delaware, etc., Tel. Co.* v. *Fiske* (1907), 40 Ind. App. 348, 81 N. E. 1100; *Knoefel* v. *Atkins* (1907), 40 Ind. App. 428, 81 N. E. 600; *Pittsburgh, etc., R. Co.* v. *Wood* (1908), 45 Ind. App. 1, 84 N. E. 1009, 88 N. E. 709.

Appellant contends that the mortgage was not assumed until June 26, 1925, when it certified to appellee that it purchased the land and assumed the payment of said mortgage indebtedness, and, since this alleged separate assumption contract had not sufficient consideration, the so-called contract is *ultra vires* of the powers of a national bank, and, therefore, invalid. We have no special finding of facts here to sustain or indicate that the trial court decided the case on any such theory, but the evidence leads us to the inevitable conclusion that the transfer and assumption of the indebtedness were all a part of one transaction, or at least incidental thereto, and that this was the theory of the trial court.

This court, in the recent case of *Scott* v. *Federal Land Bank* (1931), 92 Ind. App. 249, 175 N. E. 16, by Curtis, J., has fully and completely disposed of this question. We quote the following: "From the foregoing facts [the certificate] and the federal statutory provisions it is clear that appellant James D. Scott could not become a member of the Agricultural National Farm Loan Association until he assumed the payment of the debt of Ernestes. It is also clear that appellant Scott executed said exhibit for the purpose of inducing appellee to permit appellant to continue the $6,000 loan

made by appellee to Ernestes and also to transfer to appellant Scott said stock in the Agricultural National Farm Loan Association of the par value of $300, which stock was held by appellee as collateral security, after having been assigned to appellant Scott, all as provided by statute. The extension of the $6,000 loan to appellant Scott, his election to membership in the Agricultural National Farm Loan Association, and the transfer to him of stock in the association of the par value of $300, all constituted a good and sufficient present consideration for the assumption by him of the payment of appellee's claim. It will be observed that appellee's action of foreclosure herein is not only based on the note and mortgage executed by Ernestes and wife, but the foregoing exhibit executed by appellant Scott is made a part of the complaint, and, upon the strength of it, the lower court was asked to and did render personal judgment against appellant James D. Scott as well as against Ernestes and wife. 'The fact that the consideration is expressed in a written contract in the past tense does not necessarily show that it is a past consideration.' 13 C. J. (Contracts) p. 365, §236. The foregoing quotation is from the text of Corpus Juris. Applying the principle announced to the facts herein and to the federal statute, there can be no doubt that the lower court did not err in rendering personal judgment against James D. Scott, and that there was a present consideration for the execution of said exhibit."

Had the transfer and assumption agreement (by· a national bank and not an individual) not been a part or incident of the original transaction, appellant's contention might possibly be well taken, for it is no doubt the law that a national banking corporation can assume no liability without acquiring assets to offset the same, 'and the plea of ·ultra vires would have been a good defense.

Since we have mentioned *ultra vires*, let us dispose of that contention. As a general proposition, a national bank is disqualified from investing its money in the stock of another corporation, but, under extraordinary circumstances, it may be necessary and proper for it to acquire stock in another corporation in satisfaction of a valid debt or by way of security therefor, but with a view to its subsequent sale or conversion into money. In this case, the purchase of the Richmann land and stock in Neil's Creek National Farm Loan Association and the assumption of the mortgage by appellant were all incidents and parts of a single transaction, conducted in good faith for the purpose of avoiding a greater loss, and of collecting a part or all of a past-due note of $800, held by appellant against Richmann. Appellant did not subscribe for stock in Neil's Creek National Farm Loan Association or buy such stock as a broker or speculator in such stocks, but acquired the 22 shares in the only way possible, that is, as a purchaser of the lands mortgaged to the Federal Land Bank of Louisville, and as a part of its agreement to assume payment of that mortgage. A national bank may acquire title to stock in other corporations, either upon foreclosure when pledged as collateral, or direct conveyance, in payment or part payment of a past-due debt, and thereby subject itself to all of the liabilities of a stockholder in such other corporation, and such action on its part will not be *ultra vires*. *First Nat. Bank* v. *Nat. Exchange Bank* (1875), 92 U. S. 122, 128, 23 L. Ed. 679; *National Bank* v. *Case* (1878), 99 U. S. 628, 25 L. Ed. 448; *California Bank* v. *Kennedy* (1897), 167 U. S. 362, 17 Sup. Ct. 831, 42 L. Ed. 198; *First Nat. Bank* v. *Converse* (1906), 200 U. S. 425, 26 Sup. Ct. 306, 50 L. Ed. 537; *First Nat. Bank* v. *Nat. Exchange Bank* (1874), 39 Md. 600.

To clarify the statement that there is ample evidence

to show that the transfer and assumption were a part of and incidental to the original and main transaction, we set forth the following facts: That Charles and Vivian Richmann conveyed the mortgaged real estate to appellant when Vivian Richmann did not owe appellant anything, nor was she on her husband's note of $800 to the appellant; this note was absolutely unsecured. Is it a reasonable inference to say that the Richmanns deeded a farm of 140 acres to appellant in satisfaction of a past-due debt owed by the husband alone, upon which there was a $2,200 mortgage to appellee, without having appellant take over the obligation? The Richmanns were not produced by appellants as witnesses and the only time we hear from them is when they sign the certificate given by appellant to appellee. The Richmanns, in signing the above, referred to the certificate that the appellant purchased the real estate for $3,500, and assumed the payment of the indebtedness. The least that can be said is that the testimony concerning the consideration is conflicting, and, when confronted with a state of facts such as exists here, the trial court, in the exercise of sound discretion, has a right to disregard certain evidence, if it considers such evidence unreasonable or inconsistent with facts and circumstances shown by other evidence in the case.

The appellant paid "two or three" amortization payments and the taxes. Does it seem reasonable under all the other facts to infer that they would make payments on an obligation which they had not assumed? Then, the appellant, in order to formally complete the transaction, executed the certificate above referred to, saying "we have purchased" the realty and "have assumed the payment of said indebtedness." Let us note this particularly, the appellant says: "We have purchased the entire tract." When did they purchase?

At the date of the deed. Then they say: "And we have assumed the payment of said indebtedness." Note carefully that they do not say "by this instrument, we are assuming the indebtedness" or that, "subsequent to the purchase, we assumed" or we "later assumed." From the above evidence and inferences that can be drawn, we cannot say that "there is no evidence that the appellant bank, in accepting the deed from Charles Richmann and Vivian Richmann in satisfaction of a past-due debt, at or before the time of accepting the title to the land, agreed to assume and pay the mortgage due the appellee bank by the grantors," and the agreement did not precede the execution of the deed, as appellant contends in one of its propositions. The essential facts to support a civil action may be established by circumstantial as well as by direct evidence, and, in some cases, the circumstances may be such as to overcome direct and positive testimony to the contrary. *Evansville Metal Bed Co.* v. *Loge* (1908), 42 Ind. App. 461, 85 N. E. 979. For the reasons above set out, it is our opinion that the evidence was sufficient to sustain the finding and the finding was not contrary to law. The court did not err in overruling the motion for a new trial.

The judgment is affirmed.