## HAMILTON ET AL. *v.* COOLEY.

[No. 14,179.   Filed March 8, 1933.   Rehearing denied   December 5, 1933.   Transfer denied May 25, 1934.]

*Albert M. Bristor, Harry S. Medlock,* and *Fred R. Owens,* for appellants.

*Fae W. Patrick, Charles B. Clarke, Walter C. Clarke,* and *Henry E. White,* for appellee.

SMITH, J.—This action was brought by appellee against appellants upon a complaint in one paragraph alleging a conspiracy among the defendants to defraud

appellee out of his interest in a certain corporation, organized by appellee for the purpose of selling and installing in buildings weatherstripping and caulking for windows and doors.

An answer in general denial was filed, which closed the issues.

There was a trial by jury and verdict in favor of appellee, against all four of the appellants for $2,500.00.

Motion for a new trial was filed by all of the appellants, and overruled by the lower court, after which judgment was rendered against all of the appellants on the verdict.

The case is in this court upon one assignment of error, that of overruling appellants' motion for a new trial, to which overruling appellants separately reserved an exception.

The complaint upon which the case was tried is somewhat lengthy, and for that reason we will not set it out in full, but state the substance thereof, as follows:

On or about October, 1925, the appellee and one Wendell Barrett formed a corporation under the laws of Indiana, under the name of Superior Metal Products Company, with a capital stock of $10,000.00, with one hundred shares at $100.00 each, of which fifty shares were issued.

This corporation was organized for the purpose of selling and installing in buildings metal weatherstrip and caulking therefor. Appellee was the president of the corporation and owned forty-eight shares of the stock. One share each was issued to Hallie B. Cooley and Wendell Barrett.

That the appellee, prior to the organization of the Superior Metal Products Company, had entered in a contract with the Superior Metal Weatherstrip Company which was engaged in the manufacture of metal weatherstripping; and appellee agreed to purchase and

sell a certain, stated amount, to develop the sales, and to purchase and consume the entire output of the Superior Metal Weatherstrip Company.

That this contract conferred upon the Superior Metal Products Company the exclusive sale of weatherstripping manufactured by the Superior Metal Weatherstrip Company, and was assigned to the company, and was an asset thereof.

That by reason of the assignment of this contract to the Products Company, the stock in said company became of great value, and the company was operated at a profit to the stockholders therein.

That on December 29, 1925, the appellant, Lucius V. Hamilton, entered into a written contract with appellee, which was made part of the complaint, whereby said appellant purchased of the appellee twenty-six shares of the common capital stock, then held by the plaintiff. That at the time of sale of said stock and as a part of the transaction by which Lucius V. Hamilton, under the name of L. Vachel Hamilton, became the owner of the 26 shares of stock, the Superior Metal Products Company issued to the appellee two promissory notes payable on demand, one for $434.17 and the other for $1,310.00 which notes were to be paid out of the funds as and when received by the company from unpaid accounts receivable, as listed on the books of the company on December 1, 1925.

That the appellant, Lucius V. Hamilton, after acquiring this stock, sold and assigned part of same to Lucius O. Hamilton, Harriet S. Hamilton, and Francis F. Hamilton, and transferred one or more shares to said appellants, and thereafter caused said appellants, Lucius O. Hamilton, Harriet S. Hamilton, and Francis F. Hamilton, to be elected to membership on the board of directors.

That appellants, after becoming interested in the

company, entered into a conspiracy to wrong, cheat, and defraud appellee out of his interest in the company by breaking down its business and deflecting it to other channels, and rendering the company insolvent, so that its affairs would be wound up and the company retired from business, and appellee's stock rendered valueless.

That appellants planned to take over the business and organize a new company for that purpose.

That in carrying out the conspiracy, appellants wrongfully, unlawfully, and fraudulently used the assets of the company to pay themselves large salaries, in building experimental machines for the manufacture of weatherstripping, and soliciting orders for this product, which appellants personally filled and retained the profits. That appellants charged expenses not rightfully incurred so that the company became insolvent, and a receiver was appointed, and its affairs "wound up", and appellee's interest "wiped out."

That appellants collected the accounts pledged for payment of the notes due appellee, kept the proceeds, and paid none of it to appellee.

The complaint then alleges that the company went into receivership about January 12, 1927.

That appellants organized and incorporated another company, known as Hamilton Weatherstrip Company, which absorbed all the business of the Superior Metal Products Company.

That the acts of appellants aforesaid caused appellee to lose his stock and the sums due on his notes, to his damage in the sum of $30,000.00.

The contract between the appellee and appellant, Lucius V. Hamilton, referred to in the complaint and made part of it, was entered into on the twenty-ninth day of December, 1925, between L. Vachel Hamilton (appellant, Lucius V. Hamilton) herein, and the appellee, William B. Cooley. In this contract it was agreed

that the appellee should sell to appellant, Lucius V. Hamilton, 26 shares of stock in the Superior Metal Products Company (which, evidently by mistake, was named in the contract as the "Superior Metal Weatherstrip Company") for which appellant, Lucius V. Hamilton, was to pay $1,000.00 in cash. The contract further provided that appellee should procure the written resignation of all the officers and directors of the company and deliver same to appellant, Lucius V. Hamilton; and that a meeting should be held on December 30, 1925, to act on the resignation of the officers and directors, and to elect new ones. The contract also provided that appellant, Lucius V. Hamilton, should have the option any time within five years to purchase eight additional shares of stock for the price of $130.00 per share. Another provision in the contract stated that "L. Vachel Hamilton" should be elected president of the corporation, and should receive a salary of $300.00 per month; and at the end of the year, 50% of the amount of profits of the company in excess of $7,200.00.

After filing the record in this court, appellants sought to correct the bill of exceptions on the evidence by obtaining a *nunc pro tunc* order in the lower court, setting out objections by appellants to the admission and rejection of certain evidence and the rulings of the court thereon, and to bring same to this court by *certiorari*.

A supplemental transcript was filed in this court showing the entry of a *nunc pro tunc* order upon motion of appellants granting the relief sought. Appellee demurred to the motion, which was overruled. The lower court then granted the motion and entered the *nunc pro tunc* order. An exception was duly reserved by appellee to each proposition.

Appellee filed in this court an assignment of cross-errors raising the correctness of the court's action therein.

From the conclusion we have reached in this case, no question will need to be considered upon the admission or rejection of evidence; hence the question whether appellants properly reserved any question thereon is not material to the determination of this case, and no necessity arises for considering the assignment of cross-errors. This leads us to a consideration of the assignment of error of appellant; namely, the overruling of the motion for a new trial.

It is assigned in the motion for new trial as grounds therefor that the verdict of the jury is not sustained by sufficient evidence and is contrary to law. These are assignments No. 26 and No. 27.

A brief summary of the facts as presented by the record will be helpful in determining the questions presented herein. The appellee, in November, 1925, organized the company known as Superior Metal Products Company. He had as incorporators and directors, his wife and one other, Wendell Barrett. This company was organized to sell and install weatherstripping for buildings. It bought the materials from the Superior Metal Weatherstrip Company. The appellee was in control and managed the affairs of the corporation from the time of its organization until he sold its controlling interest to appellant, Lucius V. Hamilton, and transferred to him 26 shares of stock. The company was organized with one hundred shares, only fifty of which were issued, and all but two shares being issued to appellee. He sold 26 shares which left him 24 shares of stock in the corporation. At the time of the sale he made a contract with Lucius V. Hamilton (who used the name of L. Vachel Hamilton) one of the appellants herein, and sold the 26 shares of stock to Hamilton for $1,000.00 in cash. The written contract which was made a part of the complaint and introduced in evidence provided that the appellee would procure the

written resignation of all officers and directors of the company, and deliver same to Lucius V. Hamilton, and also obtain written notice of waiver of special meeting of stockholders, and do the things that were necessary to complete the transfer of the control of the company to the appellant, Lucius V. Hamilton.

In pursuance of this arrangement, Lucius V. Hamilton transferred two shares of stock, one to Harriet S. Hamilton, and one to Francis F. Hamilton. There was written out on the stock book of the company the transfer of one share to Lucius O. Hamilton, but this share, it seems, was never delivered. It was further provided in the written contract that the appellee was to have the option of purchasing eight additional shares, and was to receive a salary of $300.00 per month and, as further consideration for his services, 50% of the profit at the end of each year, which was in excess of $7,200.00. This contract was executed by appellant, Lucius V. Hamilton, and the appellee, William B. Cooley.

Lucius V. Hamilton, the appellant, continued in control as president and manager of the corporation for the year 1926, and up to the time of the appointment of the receiver in March, 1927. Soon after Lucius V. Hamilton obtained control, the company began to lose money and became insolvent, and appellant, Lucius V. Hamilton, loaned money to the company to keep the business going.

At the time of the sale of the stock, appellee, as president of the company, caused to be executed two promissory notes payable to the appellee, dated the day after the date of the contract between Lucius V. Hamilton and appellee. One of these notes was in the amount of $434.17, the amount of invoices due and owing by the company. The appellee advanced this money, paid the invoices, and took the company's note for that sum. At the same time another note was executed for $1,310.00, which was to cover the amount of profit the company

was supposed to have made up to that time. Both of these notes, on the reverse side thereof, contained this statement in substance, that the notes were payable on demand and in monthly installments out of the money collected on the accounts of the company which were listed upon that date, but in any event due in six months from date. The losses from bad accounts, which were to be arrived at by deducting the difference between the contract price and the sum of the material and labor charges, were to be credited on the notes.

These two notes and the loss thereof to appellee constitute part of the claim made for damages in this action.

The evidence further shows that the business of the corporation was ended after the receivership. The appellant, L. O. Hamilton, some time in May, 1927, after the Superior Metal Products' affairs had been wound up by the receiver, incorporated a company for the manufacturing of weatherstrips, known as the "Hamilton Weatherstrip Company." The other appellants in this case have no interest in this new company; however, the appellant, Lucius V. Hamilton, is employed by the Hamilton Weatherstrip Company upon a salary, and has been working for it, and was at the time of the trial of this cause:

After reviewing all of the evidence in this case and searching the entire record, we believe that there is not sufficient evidence to sustain the verdict herein. There is no evidence against the appellants, Harriet S. Hamilton, Francis F. Hamilton, or Lucius O. Hamilton, showing that they, or either or any of them, ever entered into any conspiracy or combination among themselves to wreck the Superior Metal Products Company, or that any of them had any management or control over the business, or did any of the acts alleged in the complaint in furtherance of any concerted

understanding among them. The evidence does show that there was transferred to them, by appellant, Lucius V. Hamilton, one share of stock each so as to qualify them as directors, and as far as the record discloses that was the only connection they had with the company, except to attend at times the directors' and stockholders' meetings. The same is partially true of appellant, Lucius O. Hamilton. There was one share of stock written in the stock book to him but never delivered. This is the only connection shown by this record of Lucius O. Hamilton with the company from which any inference could be drawn charging him with conspiracy, and the fact that he organized the Hamilton Weatherstrip Company, and incorporated the same in May, 1927, after the Superior Metal Products Company was in receivership. We are aware that conspiracy does not have to be proved by showing an agreement by the alleged conspirators, but that such conspiracy may be shown by inference from circumstances. We believe that there are no acts shown to have been committed by any of the appellants from which could be inferred a conspiracy on the part of either of them to do the things charged in appellee's complaint. The gist of the charge in the complaint is that these appellants conspired together to wreck and ruin the business of the Superior Metal Products Company, and to make its stock valueless, and that in furtherance of this alleged scheme, the appellants took the business of the Superior Metal Products Company, and appropriated it to themselves, or to the corporation owned and controlled by them. It is true that appellant, Lucius V. Hamilton, the president and manager of the affairs of the Superior Metal Products Company, under his contract, was to have control not only of the corporation but of its business, which was that of selling and installing metal weatherstripping for buildings. The business of this corpora-

tion depended solely on the individual ability of the members thereof to sell these products, and unless it is shown, or circumstances presented from which it could clearly be inferred, that the appellants so managed the affairs of the corporation with the intention to wreck its business, and that this was done by an understanding or agreement between appellants, then there could be no conspiracy.

"A conspiracy is defined to be 'a combination of two or more persons by some concerted action, to accomplish some criminal or unlawful purpose; or to accomplish some purpose, not in itself criminal or unlawful, by criminal or unlawful means.'" *Karges Furniture Company* v. *Amalgamated, etc., Union* (1905), 165 Ind. 421, 424, 75 N. E. 877, 2 L. R. A. (N. S.) 788, 6 Ann. Cas. 829.

"Before concerted action can amount to a conspiracy, creating liability either civil or criminal, such action must be unlawful." *Kandis* v. *Pusch* (1927), 86 Ind. App. 246, 250, 155 N. E. 618.

One of the acts charged in the complaint is that the appellants collected upon the accounts the money which was supposed to be applied to the two notes owing to appellee by the company, and failed to turn the money over to appellee. The evidence in behalf of the appellee shows that this was done by the appellant, Lucius V. Hamilton, although Hamilton claims appellee told him (Hamilton) to use this money in the business. However this may be, if appellant, Lucius V. Hamilton, collected money that belonged to appellee and failed to turn same over to him, proper proceedings could be instituted to make him account for it.

No evidence being in the record showing that the other appellants had anything to do with this or knew anything about it, there could be no recovery upon the

theory of conspiracy. We think this evidence falls far short of sustaining the theory of appellee's complaint, that of a conspiracy to defraud appellee; and that the verdict is not sustained by sufficient evidence. As the evidence is not sufficient to support the essential allegations of the complaint, it is not sufficient to sustain the verdict, and it is the duty of this court to reverse the judgment. *Wabash Paper Co.* v. *Webb* (1896), 146 Ind. 303, 310, 45 N. E. 474; *Lake Erie and Western Ry. Co.* v. *Juday* (1898), 19 Ind. App. 436, 445, 49 N. E. 843.

As to any acts committed in this case solely by the appellant, Lucius V. Hamilton, before appellee could recover upon the theory of conspiracy against the other appellants, he would have to show not only an unlawful combination of two or more persons, but must also show that pursuant to such conspiracy, some act was done which resulted in damage; and that such act complained of would not have been actionable at all except for the unlawful combination of the several appellants. *Jenner et al.* v. *Carson* (1887), 111 Ind. 522, 13 N. E. 34; 5 R. C. L., 1092, sec. 42. We therefore hold that the verdict of the jury in this case is not sustained by sufficient evidence and hence, is contrary to law.

The trial court of its own motion gave to the jury instructions Nos. 18 and 19. Instruction No. 18 is as follows:

"If you find for the plaintiff and you further find that plaintiff has sustained damages as charged in his complaint then it will become your duty to fix and estimate his damages, if any, and the measure of plaintiff's damages, if any, is the value of his twenty-four shares of stock in the corporation described in the complaint at the time of the commission of the wrongful and unlawful acts, if any, of any two or more of said defendants, as charged in the complaint; to-

gether with the value of the notes described in the complaint at said time."

It will be observed that in this instruction the court undertook to tell the jury the measure of damages. The instruction contains this statement, "Together with the value of the notes described in the complaint at said time." These notes mentioned in the instruction are the ones heretofore referred to, given by Superior Metal Products Company and signed by appellee as president to himself, at the time of the sale of stock in question. It was written on the reverse side of the notes that they were to be paid for out of the accounts receivable as collected; that, if any accounts were bad and uncollectible, there was to be credited on the note the difference between the contract price and the sum of the material and labor charges against the contract.

The complaint charged, and there was some evidence to support it, that appellant, Lucius V. Hamilton, manager of the corporation, collected some of these accounts, and failed to credit them upon the notes, claiming that he had been given authority by appellee to use the money in the business. Although these were company notes, and the company had gone into receivership, and failed, nevertheless, if appellant, Lucius V. Hamilton, as manager and director of the company, had collected these accounts and failed to apply them on the notes, he would be liable personally to appellee for such conversion of the funds. There is no evidence that the co-appellants of L. V. Hamilton had anything to do with the collection of these accounts or the payment of these notes. In no event could the value of these notes be a measure of damages in a suit for conspiracy to defraud as charged in this complaint. We hold that this instruction No. 18 is erroneous and harmful.

Likewise, appellants complain of the giving of in-

struction No. 19 by the court of its own motion. This instruction is as follows:

"If you find for the plaintiff in this case and if you further find that he had sustained damages as charged in the complaint, and when you have fixed and determined the amount of damages that he is entitled to recover, then the form of your verdict should be 'We, the jury, find for the plaintiff and we assess his damages in the sum of ........ Dollars,' writing in the amount that you find that he is entitled to recover. But, if you find for the defendants you should indicate such fact by your verdict and in such event the form of your verdict should be, 'We, the jury, find for the defendants.'

"When you retire to your jury room, you should select one of your number foreman and when you agree on a verdict, have your foreman sign such verdict and return with it into open court."

In this instruction, the court undertook to tell the jury that if they found for the appellee, and fixed the amount of his damages that their form of verdict should be "We, the jury, find for the plaintiff and we assess his damages in the sum of ........ Dollars." It will be noted that this instruction directs the jury to find against all of the appellants. It is more than mere directory as to the form of verdict, for the court permits of no other finding for appellee than that against all of the appellants. Appellants contend that this instruction is not reconcilable with instruction No. 13 given by the court of its own motion. Instruction No. 13 tells the jury in effect that if they find a conspiracy between two or more persons engaged therein, that any person not so engaged is not liable on account of any such conspiracy. Whether instruction No. 19 is in irreconcilable conflict with instruc-

tion No. 13 or not is not important as we believe that as above stated instruction 19 is erroneous.

Appellee on page 18 of his brief under the heading "Specification of error No. 30" sets out under (2), "A direction to the jury as to the form of its verdict is not an instruction." He cites the case of *Bradway* v. *Waddell* (1884), 95 Ind. 170. This was an opinion by Judge Elliot and the question there was: When one of the parties had requested the court to instruct the jury in writing, could the court give an oral instruction? This decision holds that all instructions must be in writing and if not, that it is substantial error. In that case, Judge Elliot said, "A direction to the jury to reject evidence, as to the form of the verdict, or the like, is not an instruction within the meaning of the Statute."

This does not touch the point involved here, for in the instant case the court did instruct the jury in writing and also gave this instruction No. 19 in writing. This instruction is more than a mere direction to the jury as to the form of the verdict, for it does not set out the different forms of verdict which should have been submitted, and leaves the jury to infer that if they desire to find for the appellee, then they must find against all of the appellants. Such an instruction would be erroneous, for there could have been a finding of the jury against any two or more of appellants; in other words, two or more might be guilty of a conspiracy to defraud, and the rest of the appellants found not guilty. The case cited by appellee is not in point, for the question here raised is not the proposition of the court instructing the jury orally, but, having put the instruction in writing and given it to the jury, it must accurately state the law and be within the issues, the same as any other instruction.

There are several other questions presented, but having reached the conclusion that this case must be re-

versed, it will not be necessary to consider them, as they will not likely arise on another trial.

The verdict of the jury is not sustained by sufficient evidence and is contrary to law; and instructions Nos. 18 and 19 being erroneous, we hold that the court erred in overruling appellants' motion for a new trial. Judgment is reversed with instructions to the lower court to sustain appellants' motion for a new trial, and for further proceedings not inconsistent with this opinion.

Kime, P. J., dissenting.

## DISSENTING OPINION.

KIME, J.—Being unable to agree with my colleagues I desire to express my ideas, with reference to this case, as follows: This was an action for damages caused by acts which, in legal effect, amount to a conspiracy. The jury found that appellee had been damaged by the acts of the appellants as a result of the conspiracy.

In this case, as in cases appealed from the Industrial Board, *if there is any evidence at all* to support the decision of the trial court, the judgment of that court *must be* upheld or affirmed. The rule has been held to be that when fraudulent conspiracy is fairly shown by the evidence and the reasonable inferences to be drawn therefrom, the verdict or decision is binding upon this court. *Huckstep* v. *O'Hair* (1856), 8 Ind. 253; *Smith* v. *Freeman* (1880), 71 Ind. 85, 92; *Card* v. *The State* (1886), 109 Ind. 415, 9 N. E. 591; *Hunsinger et al.* v. *Hofer* (1886), 110 Ind. 390, 11 N. E. 463. "The question as to whether a conspiracy existed, is one peculiarly for the trial court, and where there is any evidence at all supporting the decision of that court upon the question, it will be respected by this court." *Doherty et al.* v. *Holliday et al.* (1893), 137 Ind. 282, 36 N. E. 907.

Even if this were not the rule we are bound to con-

sider the evidence in the light most favorable to appellee when confronted with the sufficiency of the evidence to sustain the verdict. "If there is *any* evidence tending to support every essential fact necessary to support the verdict, it is sufficient evidence." *Federal Life Insurance Company* v. *Sayre* (1924), 195 Ind. 7, 142 N. E. 223.

"The court or jury trying the case may draw any reasonable inference of fact from the evidence." *Federal Life Insurance* v. *Sayre, supra; Keenan Hotel Company* v. *Funk* (1931), 93 Ind. App. 677, 177 N. E. 364. "It is not essential that a fact be proven by direct and positive evidence and where it may be reasonably inferred from the facts and circumstances which the evidence tends to establish it will be sufficient on appeal." *Federal Life Insurance Co.* v. *Sayre, supra; First National Bank of Vernon* v. *Federal Land Bank of Louisville* (1931), 93 Ind. App. 15, 177 N. E. 462. Even these facts "may be established by circumstantial as well as by direct evidence and in some cases the circumstances may be such as to overrule direct and positive testimony to the contrary." *First National, etc.* v. *Federal Land Bank, supra; Evansville Metal Bed Compay* v. *Lode* (1908), 42 Ind. App. 461, 85 N. E. 979. "With certain facts proven, the court not only may, but *it is its duty* to draw therefrom legitimate inference." *Czuczko* v. *Golden-Gary Co.* (1932), 94 Ind. App. 47, 177 N. E. 466.

It is also the jury's province to presume or infer that, "Where a party has competent evidence, presumably favorable to him, readily obtainable by him to prove or disprove any material fact, and fails to produce it, that the evidence if produced would be unfavorable to his contention." *Abelman* v. *Haehnel, Admr.* (1914), 57 Ind. App. 15, 32, 103 N. E. 869; *Lee* v. *The State* (1901), 156 Ind. 541, 548, 60 N. E. 299.

With these positive and definite rules of law before us, let us look to the proven evidence from which we may later draw inferences, if they be needed. Appellee Cooley, his wife and another were the owners of all the stock in a domestic corporation organized in 1925 for the purpose of selling and installing metal weather-stripping and caulking in buildings, which corporation was known as Superior Metal Products Company. This corporation had a very valuable contract with the Superior Metal Weatherstrip Company, a manufacturer of weatherstripping material, whereby the Products Company was given exclusive territory by the "Weatherstrip" company for ten years. In December of 1925 Cooley interested L. V. Hamilton in a proposition whereby Hamilton could obtain control of the Products Company with Cooley retaining a minority interest. Cooley then talked to L. O. Hamilton, the father of L. V. Hamilton, and sold him on the idea. L. O. Hamilton then put up $1,000.00 and a contract was entered into whereby the deal proposed was consummated. Cooley received the $1,000.00 and two notes of the corporation for $1,310.00 and $437.17. The $1,310.00 note represented accounts receivable of the corporation from October to the first of December, 1925. The $437.17 was a loan to the corporation by Cooley. These notes were to be paid as collected. The stock was transferred to L. O., L. V., and Francis F. Hamilton and delivered to L. V. Hamilton. L. V. Hamilton was elected president, Francis F. Hamilton, secretary-treasurer, and Harriet S. Hamilton, vice-president. From December 29, 1925, to January 1, 1927, about $9,000.00 worth of material was purchased from the "Weatherstrip" company by the "Products" company. There was competent and expert testimony that the usual selling price (installed) on this amount was $27,000.00. In June of 1926 between 85 to 90 per cent of the accounts repre-

sented by the $1,310.00 note were collected. These were never paid to Cooley at any time. L. V. Hamilton was, in the fall of 1926, developing and building a machine to make weatherstrips. This machine was being built in the basement of the building wherein L. O. Hamilton had his office. One hundred dollars was paid from the treasury of the "Products" Company on the cost price of this machine. Advertising calendars were put out late in 1926 for 1927, advertising the Hamilton Weatherstrip Company. In the fall of 1926 L. V. Hamilton approached the majority owner of the "Weatherstrip" company and asked him to sell to the Hamiltons, and a price of $22,000.00 was asked for the manufacturing company. L. V. Hamilton at this time said that he and the brother, Francis F., would "fix" Cooley. On January 12, 1927, one Albershardt, to whom the Products Company was indebted in the small sum of $240.00 for work done as a bookkeeper, filed suit asking for a receiver. L. V. and F. F. Hamilton signed a consent to the appointment of a receiver.

When this receiver was asked for, Cooley, the owner of 24 shares of stock, was in Indianapolis but was not advised of the action. A receiver was appointed and on February 21, 1927, a petition was filed by the receiver to sell a contract the "Products" company had with the Indianapolis School Board for work on parts of buildings No. 3, 6, 8, and 53 in the sum of $1,700.00, to L. V. Hamilton, doing business under the name and style of Hamilton Weatherstrip Company, for the insignificant sum of $100.00.

L. V. Hamilton, the president and manager, failed to account for many jobs that the corporation had sold and installed. There were some two hundred of these. L. O. Hamilton talked to his son L. V. about forming a strictly Hamilton Company in the late summer or early fall before the work started on the Hamilton weatherstrip-

ping machine. This scheme originated in the mind of L. O. Hamilton. There was no necessity for forming a new corporation for the purpose of manufacturing, as the "Products" corporation had the authority under its articles of incorporation to manufacture.

L. O., H. S., and F. F. Hamilton were represented in court by an attorney. There is no showing that they were physically incapacitated or prevented in any way from appearing at the trial, and testifying in their own behalf. L. O. Hamilton, Albershardt, the bookkeeper of the "Products" company, and Bristor, the attorney throughout all these proceedings for the Hamilton interests, incorporated the Hamilton Weatherstrip Company as soon as the receivership was out of the way. L. V. Hamilton was made manager of this company at the salary he received in the "Products" company. The Hamilton company was still in business at the time of the trial. Albershardt, who had kept the "Products" company's books under Cooley for $10.00 a month, was given $20.00 under L. V. Hamilton.

These are only some of the facts proven, but I believe them sufficient, with the inferences that may have been drawn by the jury, to support the verdict. Isn't it a logical and altogether legitimate inference that if a man (L. O. Hamilton) had at least $1,000.00 invested in a business which was controlled by his sons and daughter, that he knew what was going on and participated therein? This is especially so when it is recalled that he suggested the formation of the Hamilton company and invested additional capital therein by becoming the majority stockholder. Isn't it a perfectly legitimate inference that when one could get control of a business that did some $27,000.00 worth of work in one year, making a profit of at least $9,000.00, by the simple process of doctoring accounts and consenting to a friendly receivership without notice to Cooley, the

minority stockholder, that the man with the largest amount of capital therein had at least some knowledge of what was going on in his company? Isn't it a legitimate inference that a family will ordinarily look out for the interests of its own members?

Another inference that may have been drawn by the jury was that if L. V. Hamilton had told an outsider that they would fix Cooley, he might have told his father. Or isn't it just as logical to assume that the jury inferred from the acts of the family that the scheme to fix Cooley originated in the mind of L. O. Hamilton? Would not the jury be justified in inferring that a corporation which did a $27,000.00 business in the year 1926 and paid a manager $300.00 a month, was not in as bad financial condition as the books of the company might indicate? And it is altogether probable that a jury might do this in spite of the fact that a court found that a receiver should be appointed and the business wound up. It is altogether probable that the jury drew the inference that a weatherstrip manufacturing machine could not have been built in the basement of the building wherein L. O. Hamilton had his office, without his having knowledge of the fact. The fact that 85 to 90 per cent of the accounts represented by the $1,310.00 note were collected without the note having been paid, is a perfectly logical basis for the inference that a conspiracy existed to defraud Cooley. The fact that the Hamilton family, immediately after receivership, went into this same business is the basis of an inference that a conspiracy existed. Is it not altogether probable that the jury inferred that the plan for and formation of the Hamilton company to manufacture, when manufacturing could have been done under the "Products" company charter, was only part of a general conspiracy.

These inferences and others that are just as logical and may have been drawn by the jury are facts "inso-

far as concerns their relation to the proposition to be proved." They merge themselves into the proven facts from which they are deducted, and the resulting augmented facts, become the basis for other proper inferences. *Cleveland, etc., R. Co.* v. *Starks* (1915), 58 Ind. App. 341, 106 N. E. 646. We do not think it is necessary to go that far, but if necessary it can be done under the law quoted.

"It is elemental that the unlawfulness of a conspiracy may be found either in the end sought or the means to be used." *Martell* v. *White* (1904), 185 Mass. 255, 257, 69 N. E. 1085, 1086, 64 L. R. A. 260, 102 Am. St. Rep. 341; *Commonwealth* v. *Hunt* (1842), 45 Mass. 111, 123, 38 Am. Dec. 346. It is settled that "an act lawful in an individual may be the subject of civil conspiracy when done in concert, provided it is done with a direct intention to injure another, or when, although done to benefit the conspirators, its natural and necessary consequence is the prejudice of the public or the oppression of individuals." *A. T. Stearns Lumber Co.* v. *Howlett et al.* (1927), 260 Mass. 45, 157 N. E. 82, and cases there cited.

"When any number of persons associate themselves together in the prosecution of a common plan or enterprise, lawful or unlawful, from the very act of association there arises a kind of partnership, each member being constituted the agent of all, so that the act or declaration of one, in furtherance of the common object, is the act of all, and is admissable as primary and original evidence against them." *Hitchman Coal & Coke Company* v. *Mitchell* (1917), 245 U. S. 229, 62 Law Ed. 260, 275, and cases cited.

The fact is well established that Cooley was damaged materially by the conspiracy; in fact to a far greater degree than the verdict for $2,500.00. Pursuant to the conspiracy Cooley has suffered legal damage and injury

which is the proximate result of the appellants' actions. Cooley lost the right to participate in a business wherein a gross turnover of from three to four thousand dollars a month was involved. *Britton* v. *Young, et al.* (1905), 36 Ind. App. 622, 74 N. E. 905.

Amplifying, and at the risk of perhaps reiterating, I quote also from *Smith* v. *Fiscus* (1916), 62 Ind. App. 156, 160, 111 N. E. 203: "It is not necessary, in order that the fact of a conspiracy may be established, that it should be proved by evidence of an express agreement or compact between the alleged conspirators, or by direct evidence of any agreement or compact. A conspiracy may be proved inferentially, or by circumstantial evidence. Conspiracies from their very nature, it has been said, are usually entered into in secret, and are consequently difficult to be reached by positive testimony, which renders it peculiarly necessary and proper to permit them to be inferred from circumstances."

"It frequently has been held that no affirmative fraudulent representations need be shown, a concealment of the true nature of the action being sufficient. *Place* v. *Minster* (1875), 65 N. Y. 89."

"In the case of *Wolfe* v. *Pugh* (1885), 101 Ind. 293, 308, the court uses this language: 'All who accede to, concur in, and willingly and knowingly become parties to and further a conspiracy, are parties to it, without proof of further or previous agreement to concur in and further it.' It is the judgment of this court that all persons connected with the Owen County Land and Improvement Company are bound by the acts of Smith and Bixler." *Mendenhall* v. *Stewart* (1897), 18 Ind. App. 262, 47 N. E. 943; *Sanderson* v. *State* (1907), 169 Ind. 301, 82 N. E. 525."

From the above it is clear that our holding must be

that the verdict of the jury is sustained by the evidence and is not contrary to law.

Also assigned as error is the giving by the court on its own motion instructions numbered one to twenty inclusive. Eighteen of these are not discussed in the brief and error if any is accordingly waived.

Instruction number 18 is as follows: "If you find for the plaintiff and you further find that plaintiff has sustained damages as charged in his complaint then it will become your duty to fix and estimate his damages, if any, and the measure of plaintiff's damages, if any, is the value of his twenty-four shares of stock in the corporation described in the complaint at the time of the commission of the wrongful and unlawful acts, if any, of any two or more of said defendants, as charged in the complaint; together with the value of the notes described in the complaint at said time."

This instruction, when read with 13 and 19, correctly states the law and the appellants could not have been harmed thereby. As to specific reasons why appellants say 18 is bad, first is "Officers and directors of a corporation are not liable to corporate creditors, *in the absence of fraud,* for negligence or mismanagement of the company's business resulting in its insolvency, unless made so by charter or statute." This is correct but this is in the absence of fraud. Fraud is patent in this case. Then they say second is "Directors are agents of the corporation and its stockholders and owe no duty to corporate creditors." This is also a correct general statement of the law but it has no application here. Nor is there any attempt by appellants to apply this statement to any proposition or assignment. Cooley was more than a creditor, he was a stockholder and from the law set out heretofore it is clear that a stockholder can not be defrauded by a conspiracy and the conspirators not be held accountable.

These notes were to be paid as the accounts were collected. It will also be noted that they were to be valued as of the time of the commissions of the wrongful acts. Who but the jury can say when that time was. Eighty-five to ninety per cent of these notes were collected by June of 1926. It is a logical inference that all may have been collected before the wrongful acts were committed. Possibly L. V. Hamilton would have been liable personally if he had defrauded Cooley alone but when he does it in concert with others it can not be said that he alone would be liable for conversion.

Instruction 18 certainly correctly stated the measure of damages in this case. What appellee lost, if he lost anything, was the value of his stock and of his notes. What was their value was a question for the jury to decide. Appellee's entire interest was wiped out by the acts done by appellants acting "in concert" and in furtherance of their common design to acquire the whole business for themselves. They certainly took all there was in the business.

There was a clear conflict in the evidence as to whether appellee authorized the company to use the money from his accounts in the business, but if the money was so used, the amount so used, of course, would still be due appellee. The rights of the parties could in no way be affected by such use of the money. The jury might have inferred, as they had the right to do, that some, if not all, of this money which belonged to appellee, was used by the company in procuring calendars, and perhaps other advertising matter, for the new company which appellants were then engaged in forming. Indeed, some of it may have been used in the building of the machine now in use by the new company. In either event, appellants, as officers and directors, supervised the collection of these accounts and the expenditure of the money for improper purposes. If

they had not acted in concert the results achieved would not, and could not, have been brought about.

Instruction 18 could not under any view of the evidence in this case, be erroneous or harmful. Moreover, instruction 18 was more favorable to the defendants than to the plaintiff, and defendants were not harmed by it. This instruction restricted appellee's damages more than the facts and the law would warrant. In instruction 18 in this case nothing was allowed for future value; such an instruction making allowances for future value has been held not to be erroneous by this court. *Scott* v. *Brown* (1927), 90 Ind. App. 367, 157 N. E. 64, instruction 23, page 378. If anyone was harmed by instruction 18 it was appellee, and appellants cannot complain because an instruction was more favorable to them than the facts and law warrant.

It is the law that an erroneous instruction cannot be corrected by the giving of a correct instruction. *Weston* v. *State* (1906), 167 Ind. 324, 78 N. E. 1014. But this is authority only where it can be said that the giving of two inconsistent instructions lead to uncertainty in the minds of the jury as to the law. *McCutcheon* v. *State* (1927), 199 Ind. 247, 155 N. E. 544. In the case of *McCutcheon* v. *State, supra,* the defendant had been found guilty and sentenced to death in a case where an instruction read in part as follows (p. 256) :

"If you have a reasonable doubt of the guilt of the defendant as to the degrees of felonious homicide, you can only find him guilty of such degree as you have no reasonable doubt of his innocence."

This instruction is clearly erroneous and yet the Supreme Court of Indiana affirmed the lower court because the lower court had given a correct instruction on this point, which was held to have correctly instructed the jury.

We know of no reason why this court should take a

different view than that stated by the Supreme Court in the case of. *McCutcheon* v. *State, supra,* especially where this case only concerns a money judgment against appellants. Certainly appellants' money is not more sacred than the defendant's life in the *McCutcheon* v. *State* case, *supra,* and appellants' interests are not deserving of more consideration. Instructions 13, 18, and 19 are not inconsistent, and when considered together fairly and fully state the law applicable. to this case. The most that can be said is that one is a more clear and definite statement of the same thing.

Instruction 13 is as follows: "It is alleged in the complaint in this case that the defendants entered into a conspiracy to wrong and defraud the plaintiff. In order to establish a conspiracy it is not necessary to prove that any written agreement was entered into, or that any particular conversation and agreement was had between or among such persons engaged in such conspiracy. It is sufficient to establish a conspiracy if the evidence shows by a fair preponderance thereof of a working in harmony to promote some unlawful purpose or enterprise, and that each party so engaged therein received, or was to receive, some profit or benefit from such unlawful business or enterprise. To constitute such a conspiracy two or more persons must so engage in said common unlawful purpose or enterprise, and any person not so shown to have been so engaged in such common purpose or enterprise cannot be included therein, and is not liable on account of any such conspiracy."

We must bear in mind that the jury found, after having been so instructed, that all defendants were engaged in a common and unlawful purpose and enterprise and the evidence is sufficient to uphold the jury's finding.

Instruction 11, in part, is as follows: "Therefore, in

construing any single instruction you must consider it in connection with all the other instructions given you and construe them in harmony with each other."

Nothing prevented the defendants from tendering and requesting instructions covering this question more fully and appellants cannot now complain of instruction 19 because instruction 13 fully covered the subject and the jury was not misled thereby. *Prudential Life Ins. Co.* v. *Sellers* (1913), 54 Ind. App. 326, 329, 330, 331, 102 N. E. 894; *Mesker* v. *Bishop, Admx.* (1914), 56 Ind. App. 455, 468, 469, 103 N. E. 492.

Instruction No. 19 is as follows: "If you find for the plaintiff in this case and if you further find that he has sustained damages as charged in the complaint and when you have fixed and determined the amount of damages that he is entitled to recover then the form of your verdict should be, 'we the jury find for the plaintiff and assess his damages in the sum of ........ Dollars,' writing in the amount that you find that he is entitled to recover. But, if you find for the defendants you should indicate such fact by your verdict and in such event the form of your verdict should be, 'we the jury, find for the defendants.' "

"When you retire to your jury room you should select one of your number foreman and when you agree on the verdict have your foreman sign such verdict and return with it into open court."

Appellants say in their first point under this that "It is error to instruct the jury, in effect, that, if it finds for the plaintiff, it must so find as against all the defendants, when there is another instruction in the record informing the jury that any person not shown to have been engaged in the enterprise complained of is not liable on account thereof," citing and relying on only one case, that being *Goodwine* v. *Ayres* (1922), 78 Ind. App. 396, 399, 400, 136 N. E. 24. This case does not

uphold the contention advanced. In that case complaint was made of a certain instruction, and the appellee contended that if two other instructions were considered with the one complained of there would result a correct statement of law. The court recognized the rule contended for by the appellee, but said it had no application there because the instruction complained of was a mandatory instruction which directed a verdict if certain facts were found to exist. The error in the instruction there was the omission of certain facts. In 19 here all the facts are fully set out, it is complete in itself. The saving clause of 19 is "if you further find that he has sustained damages as charged in the complaint." What were the damages charged in the complaint? The damages resulting from the conspiracy as charged, which included all of the appellants. The jury found that appellee sustained the damages as charged. This is the only case cited by the appellants, and after diligent search we are unable to find any authority to support such contention.

This instruction was absolutely correct. What the appellants are really complaining of is the fact that another direction was not given which set out a form of verdict allowing or directing the jury to find for the plaintiff against certain defendants. But here the appellants were not aiding the trial court, but were sitting idly by hoping for the best. While the trial court was preparing instructions and directions as to form of verdict, it received no help from these appellants. The appellants did not even ask the court to instruct the jury in writing, so far as the briefs or record disclose. Five instructions were submitted by appellants which dealt only with acts of corporate officers.

Instruction 19 was correct and it cannot be said to be reversible error because other instructions or other forms of verdict or other directions as to the form of

verdict, not asked for by either party, were not given. *W. J. Holliday & Co.* v. *Highland Iron & Steel Co.* (1909), 43 Ind. App. 342, 355, 87 N. E. 249; *Crum* v. *State* (1897), 148 Ind. 401, 47 N. E. 833; *Cincinnati, etc., R. Company* v. *Smock* (1893), 133 Ind. 411, 33 N. E. 108; *Du Souchet* v. *Dutcher* (1888), 113 Ind. 249, 15 N. E. 459; *Foxwell* v. *State* (1878), 63 Ind. 539; *Eichel* v. *Wenhenn* (1891), 2 Ind. App. 208, 28 N. E. 193; *Lake Erie, etc., R. Co.* v. *McHenry* (1884), 10 Ind. App. 525, 37 N. E. 186; *Tracy* v. *Hackett* (1898), 19 Ind. App. 133, 49 N. E. 185, 65 Am. St. 398; *McAfee* v. *Montgomery* (1898), 21 Ind. App. 196, 51 N. E. 957.

"If a party desires a full and specific instruction . . . it is incumbent on him to prepare such an instruction and present the same to the court at the proper time, with a proper request that it be given." Elliott, App. Proc., §§735, 736; 2 Elliott, Gen. Prac. §896; Gillett Crim. Law (2nd Ed.), §§906, 915; 2 Thompson, Trials, §§2338, 2339, 2341; *Krack* v. *Wolf* (1872), 39 Ind. 88; *Pittsburgh, etc., R. Co.* v. *Lightheiser* (1906), 168 Ind. 438, 78 N. E. 1033. See also *Vandalia Coal Company* v. *Coakley* (1916), 184 Ind. 661, 667, 111 N. E. 426; *Indianapolis Traction, etc., Co.* v. *Hensley* (1917), 186 Ind. 479, 490, 115 N. E. 934, 117 N. E. 854.

The jury was fully instructed as to their right to find any combination of the appellants entering the conspiracy liable in damages. Instruction 13 is a complete answer to the appellants' contention that the jury were not instructed that it would be possible to find against only certain defendants. The important part of instruction number 13 is as follows:

"It is alleged in the complaint in this case that the defendants entered into a conspiracy to wrong and defraud the plaintiff. In order to establish a conspiracy it is not necessary to prove that any written agreement

was entered into, or that any particular conversation and agreement was had between or among such persons engaged in such conspiracy. It is sufficient to establish a conspiracy if the evidence shows by a fair preponderance thereof of a working in harmony to promote some unlawful purpose or enterprise, and that each party so engaged therein received, or was to receive, some profit or benefit from such unlawful business or enterprise."

Appellants, as shown by the evidence, have succeeded in depriving appellee of his interest in the metal weatherstripping business and caused him to lose money on the notes given by the original company. Appellants were not discouraged with the metal weatherstripping business, at least two or more of them are still engaged in it, but the company has been changed and Cooley (appellee) has been ushered out. Appellants enjoy the profits without division with appellee. From the facts proven in this case the jury had a right to infer that all of the appellants acceded to, concurred in, and willingly and knowingly became parties to and furthered the conspiracy to defraud appellee.

For the above reasons, among others that might be stated, I am of the opinion that there was no reversible error and that the judgment of the Johnson Circuit Court should be affirmed.